JESSUP *et al. v.* ILLINOIS CENT. R. Co. *et al.*

(*Circuit Court, N. D. Illinois.* November 26, 1888.)

1. RAILROAD COMPANIES—LEASES—ACTION TO ENFORCE—PARTIES.
   A bill to enforce an alleged lease averred that the C. Co. leased its road to the D. Co. for 40 years; that the latter then leased its road for 20 years to defendant, which agreed to assume the lease of the C. Co.; that the 20-year lease has expired, and defendant refuses to pay the rent reserved on the lease of the C. Co. *Held* that, the object of the bill being to compel defendant to occupy the C. road for the balance of the 40 years, the D. Co. was a necessary party.
2. SAME—CONSOLIDATION OF COMPANY.
   An averment in the bill that defendant has obtained control of the stock of the D. Co. does not show that the two companies have become merged into one, but simply that defendant has obtained a majority of the stock of the D. Co.
3. COURTS—FEDERAL COURTS—JURISDICTION—SERVICE OF PROCESS.
   Under act Cong. March 3, 1887, as amended and modified by act August 13, 1888, requiring an action in the federal courts to be brought in the district of which defendant is a resident, the federal courts of Illinois cannot obtain jurisdiction of an Iowa corporation by service of process.
4. PRACTICE IN CIVIL CASES—MOTION TO DISMISS—PARTIES—FAILURE TO SERVE.
   A co-defendant may move to dismiss, where complainants have not brought before the court a necessary party, named as a defendant in the bill.

In Equity. On motion to dismiss bill.

*T. Dewitt Cuyler* and *Lyman & Jackson,* for complainants.

*Francis O. Lyman,* for defendant Cedar Falls & Minnesota Railroad Company.

*John N. Jewett,* for defendant Illinois Central Railroad Company.

BLODGETT, J. This case is now before the court on a motion by the defendant the Illinois Central Railroad Company to dismiss on the ground that the Dubuque & Sioux City Railroad Company, an Iowa corporation, is made a party defendant in the case, but has not been served with process, and has not appeared; the moving party insisting that the Dubuque & Sioux City Railroad Company is, upon the issue made by the bill, so far interested in the subject-matter of the controversy as to make it an indispensable party to the suit, and without which the suit

ought not to proceed as against the other defendants. The bill upon its face makes the Dubuque & Sioux City Railroad Company, which is stated to be an Iowa corporation, created and organized under the laws of the state of Iowa, and having its principal office therein, and a citizen of Iowa, party defendant, and prays process and decree against it, but that company has not been served with process and has not appeared. The rule is elementary that, whenever the want of proper parties appears upon the face of the bill, it constitutes a good cause of demurrer. Story, Eq. Pl. § 541; 1 Daniel, Ch. Pr. 558. Here one defendant seeks to have the bill dismissed on motion, because the complainants have not brought before the court one of the defendants named in the bill; and this absent defendant, as the defendant making the motion insists, is a necessary party to the controversy. This principle seems to be fully sanctioned by the case of·Picquet v. Swan, reported in 5 Mason, 561, the opinion being by Justice STORY. That was a case brought by Picquet against Swan and others in the circuit court of the district of Massachusetts. Swan was made a defendant, but was at that time residing in a foreign country, and did not appear after the lapse of one full term, and perhaps part of another; and, after some efforts had been made by the service of a copy of the bill upon him to get him before the court, the other defendants moved to dismiss because Swan was a necessary party to the proceeding, and had not been brought before the court. In disposing of the motion Judge STORY said:

"Upon the actual structure of the bill it is very clear that Swan is a necessary party, and that no relief can be had against the other defendants until the debt is established against him. The whole frame of the bill points to this conclusion; and the process and proceedings to compel Swan to come in all show that he is deemed an indispensable party, or, in the sense of a court of chancery, an active and not merely a passive party. * * * The general principle is perfectly well settled that the defendant may have the bill of the plaintiff dismissed for non-prosecution, if the plaintiff does not proceed within a reasonable time. * * * The present is a case where co-defendants, having answered, insist upon the right to dismiss the bill on account of the non-prosecution of the same against Swan. It would be an intolerable grievance, if co-defendants could not insist upon such a right; for it might otherwise happen that the cause could not be brought to a hearing against them alone, and thus they might be held in court for an indefinite period, perhaps during their whole lives, and very valuable property in their hands be incapable of any safe alienation. No court of justice, and least of all a court of equity, could be presumed to suffer its practice to become the instrument of such gross mischief. We accordingly find it very clearly established that a co-defendant possesses such a right."

The bill in this case alleges that, in the month of September, 1866, the Cedar Falls & Minnesota Railroad Company, a corporation of the state of Iowa, authorized to construct and operate a railroad from Cedar Falls in said state, along the Cedar valley to the south line of the the state of Minnesota, made a lease for the term of 40 years of its entire railroad and railroad property to the Dubuque & Sioux City Railroad Company, at a fixed rental of $1,500 per year for each mile of road operated, with provisions for an increase of such rental in case the earnings per year

should exceed a certain sum; that in the month of September, 1867, said Dubuque & Sioux City Railroad Company leased its railroad and its equipment, and property pertaining to its road, to the Illinois Central Railroad Company for the term of 20 years from the 1st day of October, 1867, with the option to make such lease perpetual at any time during the said term of 20 years, and in said lease was the following clause in regard to the lease of September, 1866, of the Cedar Falls & Minnesota Railroad to the Dubuque & Sioux City Railroad Company: "It is further agreed that the party of the second part (the Illinois Central Railroad Company) shall assume the lease made by the party of the first part with the Cedar Falls & Minnesota Railroad Company." It is further alleged in the bill that the lease made in September, 1866, of the Cedar Falls & Minnesota Railroad to the Dubuque & Sioux City Railroad Company, was made in pursuance of a plan on the part of the Illinois Central Railroad Company by which the Dubuque & Sioux City Railroad Company was first to obtain control of the Cedar Falls & Minnesota Railroad, and then the Illinois Central Railroad Company was to take the lease of the Dubuque & Sioux City Railroad, so as to give the Illinois Central Railroad Company control of both these Iowa railroads, and that in furtherance of this plan the Cedar Falls & Minnesota Railroad Company made a mortgage of its railroad then constructed and thereafter to be constructed, and the franchises and property pertaining thereto, to the complainants in this suit as trustees, to secure the issue of bonds to the amount of $1,407,000, to be negotiated by the Cedar Falls & Minnesota Railroad Company, and the proceeds used in the completion of its road; and by said mortgage the rentals secured by said lease of the Cedar Falls & Minnesota Railroad were pledged for the payment of the principal and interest of this issue of bonds. That said bonds were issued and sold upon the market on the faith of such pledge of the rentals of said road, with the knowledge and consent of the Illinois Central Railroad Company; and the proceeds of such bonds applied to the construction of said railroad; and that each of said bonds had at the time it was sold an indorsement upon the back thereof, made with the knowledge and approval of the Illinois Central Railroad Company, stating, in substance, that the lease of the Cedar Falls & Minnesota Railroad Company to the Dubuque & Sioux City Railroad Company had been assumed by the Illinois Central Railroad Company, and that the minimum rent of said lease was more than sufficient to meet the entire interest on said issue of bonds. The bill does not state in terms that the lease of the Dubuque & Sioux City Railroad Company has expired, nor does it state whether the Illinois Central Railroad Company has exercised its option to make the lease perpetual, but the court will take judicial notice of the lapse of time, and that the 20-years term created by the lease had expired at the time this bill was filed; and, as the bill contains no allegation that the lease has been extended or made perpetual, the court must assume that it has not been so extended, and that the lease is at an end as between the parties. The bill also charges that since about the 27th of September, 1887, the Illinois Central Railroad Company has refused to pay the rentals reserved

in the lease of the Cedar Falls & Minnesota road, and claims that the Dubuque & Sioux City Railroad Company is now the lessee of the Cedar Falls & Minnesota road; that the default has been made in the payment of the interest on said bonds; and that it has become the duty of complainants, as trustees under the mortgage, to enforce the payment of the rental, and foreclose said mortgage. The bill also sets out various other matters, such as that the Illinois Central Railroad Company has obtained the control of the stock of the Dubuque & Sioux City Railroad Company, and that the officers of the last-named company have been selected by the Illinois Central Company; that the Illinois Central Company has not so conducted the business of the Cedar Falls & Minnesota road as to make it profitable, and secure the increase of rental contemplated by the lease; but I do not see that these allegations are in any way material to the disposition of this motion. The bill prays a decree and finding by the court to the effect that the lease of the Cedar Falls & Minnesota Railroad is binding on the Illinois Central Railroad Company for the full term of 40 years from the date thereof, and that the Illinois Central Railroad Company is bound to continue to occupy and operate the Cedar Falls & Minnesota Railroad, and to pay rentals in pursuance of said lease, and to perform all the covenants and conditions to be performed by the lessee under said lease.

Upon this statement of the scope and nature of the bill and the relief asked the question arises, does this bill upon its face show the Dubuque & Sioux City Railroad Company to be a necessary party to this suit? What parties must be before the court in order to enable a court of equity to proceed, is stated in Story, Eq. Pl. § 72, as follows:

"It has been remarked that courts of equity adopt two leading principles for determining the proper parties to a suit. One of them is a principle admitted in all courts upon questions affecting the suitor's person and liberty, as well as his property, namely, that the rights of no man shall be finally decided in a court of justice unless he himself is present, or at least unless he has had a full opportunity to appear and vindicate his rights. The other is that, when a decision is made upon a particular subject-matter, the rights of all persons, whose interests are immediately connected with that decision, and affected by it, shall be provided for, as far as they reasonably may be. * * * It is the constant aim of courts of equity to do complete justice, by deciding upon and settling the rights of all persons interested in the subject-matter of the suit, so that the performance of the decree of the court may be perfectly safe to those who are compelled to obey it, and also that future litigation may be prevented."

Then, at section 138, he says:

"If the defendants actually before the court may be subjected to undue inconvenience, or to danger of loss, or to future litigation, or to a liability under the decree, more extensive or direct than if the absent parties were before the court, that of itself will in many cases furnish a sufficient ground to enforce the rule of making the absent persons parties."

The doctrine as to who are indispensable parties is very clearly stated by the supreme court in *Barney v. Baltimore City*, 6 Wall. 284, as follows:

"The learning on the subject of parties to suits in chancery is copious, and within a limited extent the principles which govern their introduction are flex-

ible. There is a class of persons having such relations to the matter in controversy, merely formal or otherwise, that while they may be called proper parties, the court will take no account of the omission to make them parties. There is another class of persons whose relations to the suit are such that, if their interest and their absence are formally brought to the attention of the court, it will require them to be made parties, if within its jurisdiction, before deciding the case; but if this cannot be done it will proceed to administer such relief as may be in its power, between the parties before it. And there is a third class, whose interests in the subject-matter of the suit and in the relief sought are so bound up with that of the other parties that their legal presence as parties to the proceeding is an absolute necessity, without which the court cannot proceed. In such cases the court refuses to entertain the suit when these parties cannot be subjected to its jurisdiction. This class cannot be better described than in the language of this court, in *Shields* v. *Barrow*, [17 How. 130,] in which a very able and satisfactory discussion of the whole subject is had. They are there said to be 'persons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.' "

It is manifest that this suit involves a construction of the lease made by the Dubuque & Sioux City Railroad Company to the Illinois Central Railroad Company. It raises the question whether by that lease the Illinois Central Company assumed the lease of the Cedar Falls & Minnesota Railroad for 40 years from its date, and is bound to operate said Cedar Falls & Minnesota road, and pay rentals therefor. for the entire term, notwithstanding the expiration of the lease of the Dubuque & Sioux City road. By the showing of the bill the Illinois Central Railroad Company made no contract in regard to the matters in controversy directly with the Cedar Falls & Minnesota Company. The entire relation between the Illinois Central Railroad Company and the Cedar Falls & Minnesota Railroad Company is created by the lease of the Dubuque & Sioux City Railroad Company, and the clause in that lease assuming the lease of the Cedar Falls & Minnesota Railroad; and the important and natural question will be, in the light of the terms of the lease itself and of the surrounding circumstances, was it the intention of the parties to the lease of the Dubuque & Sioux City road that the assumption clause should bind the Illinois Central Company for the entire term of the lease of the Cedar Falls & Minnesota road, or was it their intention that the assumption clause should cease, and the Cedar Falls & Minnesota road be returned to the Dubuque & Sioux City Company at the expiration of the 20 years, if the lease was not extended, or was this assumption clause in the contract a provision within the control of the parties who made it, so that, even if by its terms the assumption was for the full term of the lease of the Cedar Falls & Minnesota Railroad, yet it was competent for the parties to rescind or change it, or, yet further, if the Illinois Central Company, by reason of the facts stated in the bill, shall be held, as towards the holders of these bonds, to be estopped from denying that the assumption of the lease was for the full term of 40 years, still the Dubuque & Sioux City Company is a necessary party to the bill, in order that it, too, may be decreed to

be bound by such estoppel? The bill shows that the lease of the Dubuque & Sioux City road, under which the relations with the Cedar Falls & Minnesota road existed, has expired by its own terms; and it also shows, at least inferentially, that the Cedar Falls & Minnesota road is now again in possession of the Dubuque & Sioux City Railroad Company, and that, by the understanding and conduct of the parties to the lease of the Dubuque & Sioux City Railroad, the Dubuque & Sioux City Railroad Company has resumed its possession and control of the Cedar Falls & Minnesota road. And the question arises, should this possession be divested, and the Illinois Central Railroad Company compelled to reoccupy and continue to operate the Cedar Falls & Minnesota road for 20 years more, without allowing the Dubuque & Sioux City Railroad Company to be heard in the premises? If the Dubuque & Sioux City Railroad Company is not heard, the Illinois Central Railroad Company may be placed in the position of being compelled by the decree of this court to operate the Cedar Falls & Minnesota road, and pay rent therefor, and the Dubuque & Sioux City Railroad Company not be concluded by such decree. The Illinois Central Railroad Company might therefore be placed under a decree which it might be impossible for it to perform, or, in the language already quoted from Story's Equity Pleadings, the Illinois Central Company, by such a decree as is asked, might be subjected to "undue inconvenience, or to danger of loss, or to future litigation," if the Dubuque & Sioux City Company is not brought into this case, so as to be bound by the decree. It sufficiently appears upon the face of this bill, as it seems to me, that the Dubuque & Sioux City Railroad Company has a direct interest in the event of this suit. This lease of the Cedar Falls & Minnesota road may be a valuable asset of the Dubuque & Sioux City Railroad Company, if not now, in the future; and when the Illinois Central Railroad Company should seek to re-enter and resume the operation of the Cedar Falls & Minnesota road, if a decree to that effect should be entered by this court, the Dubuque & Sioux City Railroad Company might resist such action, and compel the Illinois Central Railroad Company to resort to the courts to obtain such possession. Hence it seems to me that this is clearly a case where the suit cannot proceed to a final decree, as prayed for by the complainant, in justice to all the parties involved in the controversy, without having the Dubuque & Sioux City Railroad Company before the court. If such a decree as is asked for by the complainants is entered, certainly the Dubuque & Sioux City Railroad Company should be concluded thereby, so that the Illinois Central Railroad Company will have a clear right to perform the decree as against the Dubuque & Sioux City Railroad Company.

This suit was commenced the 1st of March, 1888. The defendant the Illinois Central Railroad Company filed its answer on the 9th of May last. The appearance of the Cedar Falls & Minnesota Railroad Company seems to have been entered, without service of process, on the 23d of March last, but no answer has been filed by that company. A replication, however, was filed to the answer of the Illinois Central Railroad Company, and the case is now at issue, so far as that company is con-

cerned. Under the act of March 3, 1887, in regard to the jurisdiction of the United States courts, and the amendatory and explanatory act of August 13, 1888, no jurisdiction of the Dubuque & Sioux City Railroad Company can be obtained in this district by the service of process.    If the Dubuque & Sioux City Railroad Company voluntarily appears, it may, under the rulings of this circuit, waive its personal privilege, and make itself a party to this suit.    In the case cited from 5 Mason, Mr. Justice STORY did not grant a peremptory order to dismiss, but entered a rule that the case should stand dismissed by a future date named, unless the defendant Swan should be brought in by such time.    While I do not see, as at present advised, from the course of the argument upon this motion, any reason to expect that the complainants will be able to secure the voluntary appearance of the Dubuque & Sioux City Railroad Company in this case, I deem it but equitable that they should have a further opportunity to do so; and hence an order will be entered that this cause be dismissed, as a matter of course, on the first Monday in February next, unless the Dubuque & Sioux City Railroad Company shall have appeared and fully submitted to the jurisdiction of the court in this case by that day.

I have not, in passing upon this motion, considered any of the matters set up in the answer of the Illinois Central Railroad Company by way of defense to the matters alleged in the bill, but have passed upon the motion solely on the face of the bill itself.    It was urged in argument very strenuously on the part of complainants from the showing of the bill that the Dubuque & Sioux City Railroad Company had become merged in the Illinois Central Railroad Company.    It is true the bill charges that the Illinois Central Railroad Company has obtained control of the stock of the Dubuque & Sioux City Railroad Company.    This allegation, upon the familiar rule that statements of this character will be taken most strongly against the pleader, only implies that the Illinois Central Railroad Company has obtained a majority of the stock of the Dubuque & Sioux City Railroad Company.    It does not appear but that there is still a minority of the stockholders of the Dubuque & Sioux City Railroad Company who hold their stock and are interested in that company, but, even if the Illinois Central Railroad Company is the owner of the entire stock of the Dubuque & Sioux City Railroad Company, still, the Dubuque & Sioux City Railroad Company is a separate entity, exercising its rights and franchises under the laws of the state of Iowa, and is as essentially a necessary party to the case as if its stock were held by others than the Illinois Central Railroad Company.   Upon this question I read an instructive extract from an opinion of the supreme court in *Car Co.* v. *Railroad Co.*, 115 U. S. 597, 6 Sup. Ct. Rep. 198

"The Missouri Pacific Company has bought the stock of the St. Louis, Iron Mountain & Southern Company, and has effected a satisfactory election of directors, but this is all.    It has all the advantages of a control of the road, but that is not, in law, the control itself.    Practically it may control the company, but the company alone controls its road.    In a sense the stockholders of a corporation own its property, but they are not the managers of its business, or in

the immediate control of its affairs. Ordinarily they elect the governing body of the corporation, and that body controls its property. Such is the case here. The Missouri Pacific Company owns enough of the stock of the St. Louis, Iron Mountain & Southern to control the election of directors, and this it has done. The directors now control the road through their own agents and executive officers, and these agents and officers are in no way under the direction of the Missouri Pacific Company. If they or the directors act contrary to the wishes of the Missouri Pacific Company, that company has no power to prevent it, except by the election, at the proper time and in the proper way, of other directors, or by some judicial proceeding for the protection of its interest as a stockholder. Its rights and its powers are those of a stockholder only. It is not the corporation, in the sense of that term as applied to the management of the corporate business or the control of the corporate property."

This case and all the reasons of the court upon it seem to me to completely answer all the allegations of this bill as to the Illinois Central Company's control of the Dubuque & Sioux City Company, and by the light of this decision it is clear that the Dubuque & Sioux City road is a separate entity of itself, and as such is necessarily a party, so that the court may make its decree so as to bind all parties to be affected by it.