## PAGE v. TOWN OF GALLUP et al.
### (No. 2327.   June 15, 1920.)
### SYLLABUS BY THE COURT.

1. Where a material issue is tendered by the pleadings, judgment on the pleadings is improper.          P. 244

2. Where power to do an act is conferred upon a municipality in general terms without describing the mode of exercising it, the trustees have the discretion as to the manner in which the power shall be employed, and the courts will not interfere with this discretion. This rule prevails, of course, only where there is no fraud or collusion on the part of the officers charged with the performance of the duty.          P. 245

3. A municipality in its discretion may authorize its property to be used incidentally for a purpose other than that for which it is primarily purchased or constructed, if the use for incidental purposes does not interfere with the use for the primary purpose.          P. 246

4. In a suit to set aside and annul a written executory contract, and to perpetually enjoin one of the parties thereto from performing the contract on his part, all the parties to the contract are necessary and indispensable parties to the

suit, without which the court is without jurisdiction to annul such contract, or to enjoin a party from performing it.   P. 247

5.   Where a suit cannot be entertained and a decree made in respect to the interest before the court without doing manifest injustice to interested parties who are not and cannot be brought before the court, the suit will be dismissed.   P. 247

6.   The court will not decide a question which has become moot.                    .         .            P. 252

Appeal from District Court, McKinley County; Reynolds, Judge.

Suit by Gregory Page against the Town of Gallup and others.   Judgment for complainant, and defendants appeal.   Reversed and remanded with instructions.

BURKHART & COORS, of Albuquerque, and ALFRED RUIZ, of Gallup, for appellants.

Where issue of fact is raised by the pleadings, judgment on pleadings is improper. 31 Cyc. 608; 1 Suther. Code Pl. Sec. 1447; Reed v. Rogers, 19 N. M. 177.

Where power to do an act is conferred upon a municipality in general terms without describing the mode of exercising it, the trustees have a discretion as to the manner in which the power shall be employed, and the courts will not interfere with this discretion.   Sub-sec. 68, Sec. 3564, Code 1915; 1 Dillon Munc. Corps Secs. 242, 376; 4 McQuillan Munc. Corps sec. 1834.

A municipality in its discretion may authorize its property to be used incidentally for a purpose other than that for which it is primarily purchased or constructed, if the use for incidental purpose does not interfere with the use for the primary purpose.   Smith v. Raton 140 Pac. (N. M.) 109; Pikes Peak P. 60 v. Colo. Spgs. 105, Fed. 1; Henderson v. Young, 83 S. W. 583; Overall v. Madisonville 102 S. W. 278; McQuillon Munc. Corps. Sec. 1799.

The Stearns-Roger Manfacturing Company is a necessary and indispensable party to this suit and not having been made a party, the final decree herein is null and void. Art. 14 Sec. 1 U. S. Const.; Walrath v. County

Com. 134 Pac. 204, (N. M.) ; Miller v. Klasner, 140 Pac. 1107; Denniso v. Jerome, 43 Colo. 456; McLean v. Farmer's H. L. Co.,* 44 Colo. 184; Archuleta v. Archuleta, 52 Colo. 601.

H. C. DENNY, of Gallup, and C. M. BOTTS, of Albuquerque, for appellee.

The record discloses an unlawful general scheme to erect a municipal lighting plant under the guise of extending the municipal water works system.  Const. N. M. Art. 9, Secs. 9 and 12; Const. N. M. Art. 9, Sec. 13; Chap: 54—Sec. 13—Laws 1915; High on Injunctions Secs. 1236-7; Dillon on Municipal Corporations—Secs. 1570 to 1590; McQuillan on M. C., Secs. 2179 and 2596.

The court did not err in refusing to grant appellants a trial.  Wallace v. Baisley, (Ore) 30 Pac. 432.

The Stearns-Rogers Manufacturing Company of Denver, Colo., was not a necessary party to this action. McQuillin on Municipal Corporations—Sec. 2602 p. 5370; City Water Supply Co. v. Ottumwa—120 Fed. 309.

OPINION OF THE COURT.

ROBERTS, J.  Appellee instituted this suit in the district court of McKinley county against the appellants, town of Gallup and its officials, by which he sought to enjoin and restrain the said appellants from carrying out the terms of a certain contract, entered into by the said town with the Stearns-Rogers Manufacturing Company for the purchase of electrical machinery and equipment.  The complaint alleged that it was given out by said town that said machinery had been purchased for the purpose of pumping and supplying water to said town, but in truth and in fact such stated purpose was but a subterfuge, and that the machinery contracted for was purchased for the purpose of installing an electric light plant; that bonds had been voted and. sold for the purpose of constructing a water-works system, and that the town officials were diverting funds so raised for the purpose of constructing an electric lighting system.  Appellee was alleged to be a resident and taxpayer of the

town, and suit was brought on behalf of himself and all others similarly situated. The complaint further alleged that the said electrical machinery and equipment so contracted to be purchased was not necessary or essential for a complete waterworks system for the said town, and that the purchasing of the same would be a waste of the public funds of the said town. This constituted what might be designated as appellee's first cause of action, and the relief sought as to this was an injunction preventing and restraining the appellants from performing or carrying out any of the terms of the contract for the purchase of said electrical equipment, and from entering, or attemping to enter into further contracts for the purchase of additional electrical equipment, and from misappropriating and misapplying any of the funds from the issuance and sale of said water bonds, and from appropriating and applying any of the proceeds of said bond issue and sale to any other purpose than that of the construction and extension of the system for the purpose of supplying water to the said town of Gallup.

The appellants filed an answer, denying the misappropriation and that appellants intended to purchase, or had contracted to purchase, the machinery for the purpose of installing a lighting plant for the said town, and denied that the machinery was not necessary to furnish power for pumping a necessary supply of water for the town. The answer affirmatively alleged that the machinery contracted to be purchased was necessary for a modern electrical pumping plant to furnish an adequate supply of water for the present and reasonable anticipated needs of the town and its inhabitants; that no machinery whatever had been contracted for that was not necessary for said pumping plant, and to pump water, and that the town intended to use the same machinery which was installed and was necessary to operate the water pumps of the town to supply electric current for lighting purposes; but that such latter use was incidental to the primary use for pumping, and would not interfere with or impair the usefulness of the plant for the primary use of pumping water; that such inci-

dental use was for the benefit of the town and its inhabitants; that no additional machinery whatever over that required for furnishing power for pumping water had been or would be purchased by the appellants with the proceeds of said bond issue.

The appellee in his complaint set up what is designated as a second cause of action against the appellants, in which he alleged that the town trustees were proposing to issue water and light revenue warrants of the town of Gallup in the amount of $30,000, and to use the proceeds derived therefrom for the purpose of installing an electric light plant and system for lighting the streets and residences of the town of Gallup; that they were pledging revenues derived from the waterworks, and the lighting plant to be constructed, to the payment of such revenue warrants and interest thereon; that such revenue warrants constituted an indebtedness of the town of Gallup, and the warrants when issued would be void for two reasons: First, the proposition to create the indebtedness had not been submitted to a vote of the qualified electors of the town, as required by section 12 of article 9 of the state Constitution; and, second, that it would create an indebtedness in excess of the limitation imposed by section 13 of article 9 of the state Constitution.

The answer as to this denied that the revenue warrants would constitute any indebtedness against the town of Gallup; alleged that only certain portions of the revenues derived from the water and lighting system were pledged to the payment of such revenue warrants; that the money to be derived therefrom was to be used for the construction and installation of a lighting system for the town of Gallup, which was to be operated in conjunction with the waterworks.

The trial court granted a temporary injunction upon the filing of the complaint, and, when appellants filed their answer, they moved the court to dissolve the temporary injunction, which was refused. Appellants then asked that the case be set down for trial. This was re-

fused because of the view entertained by the court that the answer stated no defense to the matter set forth in the complaint. Appellee filed a reply, denying that portion of the answer which set up the fact that the purchase of the machinery in question was necessary for the operation of the water system.

After the court announced that no evidence would be heard counsel for appellee moved for a judgment on the pleadings, which was granted, and the temporary injunction was made permanent. By the final judgment the appellants were perpetually restrained and enjoined from fulfilling or carrying out any of the terms of the contract theretofore attempted to be entered into by them for the purchase by the said town of Gallup of electrical supplies and equipment, and from entering into, or attempting to enter into, further contracts for the purchase of additional electrical equipment, and from issuing or negotiating any of the evidences of indebtedness or so-called water and light revenue warrants attempted to be authorized by Ordinance 125 of the town of Gallup, and from misappropriating or misapplying any of the funds derived from the issue and sale of bonds theretofore made for the purpose of securing funds for the construction and extension of a system for supplying water for said town of Gallup, and from applying any of the proceeds of said bond issue and sale to any other purpose than that of the construction and extension of a system for supplying water for said town, and from doing or suffering to be done each and all of the acts and threatening acts complained of in appellee's complaintn. To review this judgment this appeal is taken.

(1)    The first point to be considered is whether the appellee was entitled to judgment on the pleadings. It is the contention of appellants that an issue of fact was raised by the answer; consequently they were entitled to a trial. The rule of law is well settled that "where a material issue is tendered by the pleadings, judgment on the pleadings is improper." 31 Cyc. 608; Sutherland on

·Code Pleadings, vol. 1, § 1447; Reed v. Rogers, 19 N. M. 177, 141 Pac. 611; Dugger v. Young, 25 N. M. 671, 187 Pac. 552. The material issue tendered here by appellants' answer was as to whether or not the town council, acting in good faith within its discretion, determined and decided that it was necessary to install the electrical machinery in question for the purpose of pumping water for the town. The answer set up that competent engineers had advised the town council that the economical and efficient way to pump the water was to do it by electric generators, and use the current for the purpose of power. with which to pump the water, and that the town council, in its discretion, had decided that this was the proper and most economical way to operate the plant. This tendered necessarily an issue of fact.

(2) Where power to do an act is conferred upon a municipality in general terms without describing the mode of exercising it, the trustees have the discretion as to the manner in which the power shall be employed, and the courts will not interfere with this discretion. 1 Dillon on Municipal Corporations, § 242; McQuillin on Municipal Corporations, vol. 1, § 376. This rule prevails of course, only where there is no fraud or collusion on the part of the officers charged with performance of the duty. The discretion which the officers are to exercise is an honest one, and so long as such officials are so acting the court has no power to interfere. But if the court should be satisfied in a proper case that the town trustees, or other officers charged with the performance of the duty and the exercise of the discretion, were fraudulently pretending that a certain course should be pursued, or act done, the court would interfere. Take, for example, the present case. Suppose the trial court had heard evidence, and therefrom had become satisfied that the town trustees had not in good faith determined that the electric generators should be installed for the purpose of pumping water, but such were to be installed primarily for the generating of electric current to light the town, and that the stated purpose of installing the

generators for pumping water was only a subterfuge
and a fraud for the purpose of using the money voted
for a water system for the installation of a lighting
plant; clearly the court would have been justified in
interfering. But the court could not say without proof,
in the face of the denials and statements contained in
the answer, that the town trustees were not acting in
good faith. The court probably drew the inference,
from the allegations contained in the complaint and ad-
mitted in the answer as to the intended use of the $30,-
000 to be derived from the issuance and sale of water
and light revenue warrants, which it was admitted was to
be used for installing a lighting plant and system in con-
nection with the waterworks, that the primary purpose
of installing the machinery purchased from the Stearns-
Rogers Manufacturing Company was in connection with
the lighting plant. But the answer stated that such was
not the primary purpose.

(3) A municipality in its discretion may authorize
its property to be used incidentally for a purpose other
than that for which it is primarily purchased or con-
structed, if the use for incidental purposes does not
interfere with the use for the primary purpose. This
principle was affirmed by this court in the case of Smith
v. City of Raton, 18 N. M. 613, 140 Pac. 109, and is
supported by many other authorities; Pike's Peak Power
Co. v. City of Colorado Springs, 105 Fed. 1, 44 C. C. A.
433; City of Henderson v. Young, 119 Ky. 224, 83 S. W.
583; Overall v. Madisonville, 125 Ky. 684, 102 S. W.
278, 12 L. R. A. (N. S.) 433. If it was true, as al-
leged in the answer, that the machinery which it was
proposed to install was necessary for the present and
reasonably anticipated needs of the town for pumping
water, the fact that the town proposed to use the ma-
chinery in connection with some other municipal use
could not operate to prevent the town from installing the
machinery. A moment's consideration will demonstrate
the unsoundness of appellee's position in this regard. It
was a question of fact, of course, as to whether the ma-

chinery in question was necessary for the operation of the water plant, or whether the council in good faith had determined that it was necessary. Suppose, for example, that the court after hearing evidence had come to the conclusion that the said machinery was proper and necessary for such purpose. Would it have enjoined the town from installing it simply because the town proposed incidentally to use it in connection with some other use while not being used in pumping water? If so, then the town would be precluded from installing any kind of machinery or equipment that might be used incidentally for any other purpose. This, as we have shown, is an erroneous view, and the court should have heard evidence upon the issue of fact tendered.

(**4, 5**) While the case must be reversed upon this ground, there is another vital question that should be determined for the guidance of the court upon a remand of the case; and that is as to whether or not the Stearns-Rogers Manufacturing Company was a necessary and indispensable party to this suit. The appellee asked the court to determine that the contract between the town and the Stearns-Rogers Manufacturing Company was null and void, and that the town be enjoined from carrying out such contract for the purchase of the machinery in question, and from paying out any money under the contract, and the decree was in accord with the relief asked.

In a suit to set aside and annul a written executory contract, and to perpetually enjoin one of the parties thereto from performing the contract on his part, all the parties to the contract are necessary and indispensable parties to the suit, without which the court is without jurisdiction to annul such contract, or to enjoin a party from performing it. This principle of law was announced by this court in the case of Walrath v. Board of Commissioners, 18 N. M. 101, 134 Pac. 204. It was there said that the court will take notice of the absence of indispensable parties when such fact is made to appear, though not raised by the pleadings, or suggested

by counsel, and will dismiss the plaintiff's bill, when to grant the relief prayed would injuriously affect persons materially interested in the subject-matter and not made a party. See, also, Miller v. Klasner, 19 N. M. 21, 140 Pac. 1107. Appellee, contends, however, that the present case is distinguishable from the case of Walrath v. Board of Commissioners, supra, in that there the contractors were within the jurisdiction of the court, while here the contractor is without the jurisdiction, and to require the appellee to make the Denver corporation a party would be to permit the wrong complained of to be without any remedy whatsoever, because there is no court, state or federal, which can acquire jurisdiction of both the municipality and the Denver company, unless the Denver company elects to voluntarily appear in the state court. The only case cited by appellee in support of his contention is the case of Water Supply Co. v. City of Ottumwa (C. C.) 120 Fed. 309. This was a decision by a federal district judge from which no appeal was taken, and so far as we know the case has never been cited or referred to by any other court. It stands alone, and we are unable to agree with the views therein expressed.

In determining the question of parties, it is said in Bates on Federal Equity Procedure, vol. 1, § 42:

"* * * It would seem that courts of equity are guided by three leading principles, viz.:

"(1) A court of equity cannot make a decree which materially and directly affects the rights of a person, without that person being either actually or constructively before the court, and having, according to the established forms of procedure, a full opportunity to vindicate his right, and invoke the powers of the court for its protection and preservation; and the court can make no decree between the parties before it which so far involves or depends upon the rights of an absent person that complete and final justice cannot be done between the parties to the suit without materially and directly affecting the rights of the absent person. This is an inflexible principle, and is not confined in its operation to courts of equity; no court can adjudicate directly upon a person's right without the person being actually or constructively before the court. The principle is founded in natural justice, and is secured by constitutional guaranty; it is due process of law.

"(2)  Another principle acted upon is that 'it is the con-
stant aim of a court of equity to do complete justice by de-
ciding upon and settling the rights of all persons interested in
the subject of the suit, to make the performance of the decree
of the court perfectly safe to those who are compelled to
obey it, and to prevent future litigation.'

"(3)  A third principle acted upon is founded in the solici-
tude of the court of equity to protect the defendant in suits
from 'being sued or molested again respecting the same mat-
ter either at law or in equity.'  This principle is clearly dis-
tinguishable from the one last above mentioned, which seeks
to prevent future litigation generally.  Aside from the general
policy of preventing litigation, courts of equity are careful to
frame their decrees for the special protection of the defendant
before the court against further molestation respecting the
same matter decreed upon; and for the accomplishment of
this purpose the plaintiff is required to bring before the court
'all such persons who are so circumstanced that, unless their
rights be bound by the decree of the court, they might cause
future molestation or inconvenience' to the defendant against
whom relief is sought."

The Supreme Court of the United States in the case of
Barney v. Baltimore, 6 Wall, 280, 18 L. Ed. 825, with
reference to the subject of parties, said:

"The learning on the subject of parties to suits in chancery
is copious, and within a limited extent, the principles which
govern their introduction are flexible.  There is a class of per-
sons having such relations to the matter in controversy,
merely formal or otherwise, that, while they may be called
proper parties, the court will take no account of the omission
to make them parties.  There is another class of persons
whose relations to the suit are such that, if their interest and
their absence are formally brought to the attention of the
court, it will require them to be made parties if within its
jurisdiction, before deciding the case.  But if this cannot be
done, it will proceed to administer such relief as may be in its
power, between the parties before it.  And there is a third
class, whose interests in the subject-matter of the suit and in
the relief sought, are so bound up with that of the other
parties that their legal presence as parties to the proceeding
is an absolute necessity, without which the court cannot
proceed.  In such cases the court refuses to entertain the
suit, when these parties cannot be subjected to its juris-
diction."

In the case of Shields v. Barrow, 17 How. 130, 15 L.
Ed. 158, the court after discussing the act of Congress of
February 28, 1839 (5 Stat. at L. 321), and the forty-
seventh rule of the equity practice of the Circuit Court

of the United States, which authorized the court to proceed without all the parties in certain cases, said:

"It remains true, notwithstanding the act of Congress and the forty-seventh rule, that a circuit court can make no decree * * * between the parties before it, which so far involves or depends upon the rights of an absent person, that complete and final justice cannot be done between the parties to the suit without affecting those rights. To use the language of this court, in Elmendorf v. Taylor, 10 Wheat. 167: 'If the case may be completely decided, as between the litigant parties, the circumstance that an interest exists in some other person, whom the process of the court cannot reach, as if such party be a resident of another state, ought not to prevent a decree upon its merits.' But if the case cannot be thus completely decided, the court should make no decree."

These principles have been consistently adhered to by the United States Supreme Court and all the state courts, so far as we are aware. The fact that the absent party would not be bound or concluded by a decree does not establish the fact that it is dispensable. Of course the Stearns-Rogers Manufacturing Company would not be bound by the decree in this case, because it was not a party to the suit, and to attempt to bind it by the decree would be depriving the corporation of its property without due process of law. But the interest of the absent corporation would be vitally affected by the decree, for on the one side the town of Gallup would be perpetually enjoined from carrying out the contract, or paying the contractor the stipulated price. The effect of such an injunction was pointed out in the case of Walrath v. Board of Commissioners, supra.

In Street's Federal Equity Practice, vol. 1, § 521, the author quotes from many cases decided by the Supreme Court of the United States and the various federal courts, and says:

"The general principle recognized in these cases is that where a suit cannot be entertained and a decree made in respect to the interest before the court without doing manifest injustice to interested parties who are not and cannot be brought before the court, the suit will be dismissed."

The following cases are cited: Mallow v. Hinde, 12 Wheat. 193, 6 L. Ed. 599; Shields v. Barrow, 17 How.

130, 15 L. Ed. 158; Barney v. Baltimore, 6 Wall. 280, 18 L. Ed. 825; Bank v. Carrollton Railroad, 11 Wall. 624, 20 L. Ed. 82; Ribon v. Railroad Cos., 16 Wall. 446, 21 L. Ed. 367; Davenport v. Dows, 18 Wall. 626, 21 L. Ed. 938; Kendig v. Dean, 97 U. S. 423, 24 L. Ed. 1061; Gregory v. Stetson, 133 U. S. 579, 10 Sup. Ct. 422, 35 L. Ed. 792; New Orleans, etc., Co. v. New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; Equitable Life Assurance Soc. v. Patterson (C. C.) 1 Fed. 127; Bell v. Donohoe (C. C.) 8 Sawy. 435, 17 Fed. 710; Conolly v. Wells (C. C.) 33 Fed. 205; Jessup v. Illinois Cent. R. Co. (C. C.) 36 Fed. 735; Chadbourne v. Coe, 2 C. C. A. 327, 51 Fed. 479; Hull v. Chaffin, 54 Fed, 437, 4 C. C. A. 414; Averill v. Southern Ry. Co. (C. C.) 75 Fed. 736.

And the fact that it will be impossible to bring the indispensable parties before any court apparently is of no importance, and we fail to see how it can be given consideration in the face of the constitutional provision forbidding the deprivation of property without due process of law. The reason for the rule is that where a party goes into a court of equity, asking the court to give him relief, he must have before the court all parties whose rights may be affected by the relief sought, because the court will not extend its arm to give him relief, at his solicitation, unless the parties to be affected are before the court and have an opportunity to resist the application, the granting of which will be detrimental to them. When a party goes to the court seeking relief, he must bring the parties to be affected by the decree before the court, otherwise the court will not act.

In the case of Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499, the state filed a suit in the Supreme Court of the United States to prevent by injunction the Northern Securities Company, a corporation organized under the laws of another state, from obtaining and exercising ownership and control of two or more competing railroad companies of the state of Minnesota. The court held that the

two railroad companies were indispensable parties, and said:

"When it appears to a court of equity that a case, otherwise presenting ground for its action, cannot be dealt with because of the absence of essential parties, it is usual for the court, while sustaining the objection, to grant leave to the complainant to amend by bringing in such parties. But when it likewise appears that necessary and indispensable parties are beyond the reach of the jurisdiction of the court, or that when made parties, the jurisdiction of the court will thereby be defeated, for the court to grant leave to amend would be useless."

The same rule was followed by the court in the case of California v. Southern Pacific Co., 157 U. S. 229, 15 Sup. Ct. 591, 39 L. Ed. 683, in which it was held that the city of Oakland was an indispensable party; and, because the joinder of this party would have defeated the jurisdiction of the court, the case was dismissed.

Cases almost analogous to the present are those where suit is brought by a taxpayer to enjoin the levying of taxes, or the payment of money on county bonds or warrants, because of alleged invalidity of the bonds or warrats. In such cases the courts are practically unanimous in holding that the holders of the bonds or warrants are indispensable parties. See note to the case of State ex rel. v. Gormley, 5 Ann. Cas. 856, and note to the same case in 3 L. R. A. (N. S.) 256. The case of Hoppock v. Chambers, 96 Mich. 509, 56 N. W. 86, is identical with the present case, except that it does not appear whether the contractor was within or without the jurisdiction of the court.

From the authorities we are compelled to hold that the contractor was an indispensable party to this suit, in so far as the suit sought to have the contract declared null and void, and the town and its officers enjoined from carrying out the same. It is probable that the town and its officers might have been enjoined from unlawfully diverting the moneys raised by the sale of the water bonds without making the Stearns-Rogers Manufacturing Company parties, but this question is not here for consideration.

(6)    As to the other cause of action stated in the

complaint—i. e., the injunction sought to restrain the town and its officers from issuing the $30,000 worth of water and light revenue warrants and using the proceeds in the construction and completion of a lighting system and plant—it is sufficient to say that the question presented under this ground of the complaint is now moot. The state Legislature by chapter 68, Laws 1919, enacted since this suit was instituted, provided in part:

"No * * * incorporated city, town, or village shall be permitted to issue or negotiate any certificate of indebtedness, the payment of which is secured by a pledge of or lien upon any property, or the income or revenue derived therefrom, belonging to such municipality, and all such certificates or other evidences of indebtedness issued contrary to the provisions hereof, shall be void."

By chapter 137, Laws 1919, it is made a penal offense for any officer or agent of any municipality to issue or negotiate any certificate of indebtedness on behalf of said municipality, the payment of which is secured by pledge or lien upon property, or the income or revenue derived therefrom, belonging to such municipality, and all such certificates are declared to be null and void.

In view of these two legislative acts no authority exists in the town of Gallup, at this time, to negotiate or sell these proposed certificates of indebtedness. It would be useless, therefore, to pass upon the question as to the validity of these certificates, as of the time the injunction was issued, and the other questions raised in connection therewith. The court will not decide a question which has become moot. State ex rel. Woods v. Montoya, 23 N. M. 599, 170 Pac. 60.

For the reasons stated, the cause will be reversed and remanded to the district court, with instructions to set aside its judgment and to proceed in accordance with this opinion; and it is so ordered.

PARKER, C. J., and HOLLOMAN, D. J., concur.