402 P.2d 377

**LEA COUNTY ELECTRIC COOPERATIVE, INC., Petitioner-Appellant,**

**v.**

**NEW MEXICO PUBLIC SERVICE COMMISSION, Southwestern Public Service Company and New Mexico Electric Service Company, Defendants-Appellees.**

**No. 7601.**

Supreme Court of New Mexico.

May 24, 1965.

Heidel, Swarthout & Samberson, Lovington, for appellant.

Earl E. Hartley, Atty. Gen., Frederick G. Von Huben, John Jennings, Sp. Asst. Attys. Gen., Santa Fe, for New Mexico Public Service Comm.

Hinkle, Bondurant & Christy, Paul W. Eaton, Jr., Roswell, for Southwestern Pub. Serv. Co.

Neal & Neal, Hobbs, for New Mexico Electric Serv. Co.

MOISE, Justice.

On June 1, 1961, Lea County Electric Cooperative, Inc., hereinafter referred to as petitioner, pursuant to § 68–7–1.1, N.M.S.A. 1953, filed its application for a certificate of convenience and necessity before the New Mexico Public Service Commission, hereinafter referred to as the Commission. Southwestern Public Service, hereinafter referred to as "Southwestern" and New Mexico Electric Service Company, hereinafter referred to as "New Mexico Electric" intervened in the cause.

Petitioner is a rural electric cooperative organized in 1946 under the Rural Electric Cooperative Act (§§ 45–4–1 to 45–4–32, N.M.S.A.1953) and since 1949 has owned and operated electric generation, transmission and distribution facilities in Lea, Chaves and Eddy Counties, New Mexico, and was found by the Commission to be serving approximately 6,000 member-customers and other customers in the rural areas of the three counties as well as in the City of Lovington, the Town of Tatum, and in several unincorporated communities. Southwestern owns and operates plants and facilities for rendering electric service to the public in each of the named counties; New Mexico Electric does likewise in the area of Lea County where petitioner seeks a certificate.

An order granting petitioner a certificate of convenience and necessity was issued by

the Commission. However, it did not meet with the approval of petitioner and it accordingly filed a petition for review under § 68–9–1, N.M.S.A.1953. The Commission, Southwestern and New Mexico Electric all moved to dismiss on the ground that the petition for review failed to state a claim on which the relief prayed for could be granted. The motions were sustained and petitioner has appealed to this court from the order of dismissal as provided in § 68–9–7, N.M.S.A.1953.

The petition for review which was dismissed set forth that the order of the Commission was unreasonable, unlawful and discriminatory because it failed to delineate the service area of petitioner. In its appeal to this court petitioner relies on one point for reversal and states that the sole question involved is whether the Commission correctly construed § 68–7–1.1, N.M.S.A.1953, in failing and refusing to delineate petitioner's service area in a situation where part of its system is in an area previously certificated under a blanket certificate to another utility.

By § 2, Chap. 89, N.M.S.L.1961, § 68–3–2, N.M.S.A.1953, was amended to read, insofar as here material, as follows:

"Unless otherwise specified, when used in the Public Utility Act, as amended:

\*     \*     \*     \*     \*.     \*

"F. 'Public utility' or 'utility' means every person not engaged solely in interstate business and except as hereinafter stated, that now does or hereafter may own, operate, lease or control:

"(1) Any plant, property, or facility for the generation, transmission, or distribution, sale or furnishing to or for the public of electricity for light, heat, or power or other uses, *including corporations organized under Sections 45–4–1 through 45–4–32 New Mexico Statutes Annotated, 1953 Compilation;* known as the Rural Electric Cooperative Act; \* \* \*." (Emphasis added.)

The emphasized language was included in the section for the first time, and was evidently the answer of the legislature to the holding by this court in Socorro Electric Cooperative, Inc. v. Public Service Company, 66 N.M. 343, 348 P.2d 88, decided in 1959, to the effect that a rural electric cooperative was not a "public utility" within the meaning of the Public Utility Act. See Edington v. New Mexico Public Service Commission, 74 N.M. 647, 397 P.2d 300, for a history of public utility legislation in this state.

Section 68–7–1.1, supra, was enacted as § 8, Chap. 89, N.M.S.L.1961, and reads as follows:

"A. Within ten [10] days after the effective date of this 1961 act, each utility brought within the jurisdiction

of the public service commission for the first time by virtue of this 1961 act, shall file with the commission an application for a certificate of convenience and necessity covering its present plant, lines and system. Upon proof of present existence and operation thereof, the commission shall grant the certificate to such utility.

"B. In the event the certificate granted a utility under subsection A of this section, overlaps or conflicts with a certificate heretofore issued by the commission and exercised within the time required under Section 68–7–2 New Mexico Statutes Annotated, 1953 Compilation, both certificates shall be valid and both utilities shall be permitted to continue service."

Although § 68–7–1.1, supra, states that the application required to be filed by co-operatives shall be for "a certificate of convenience and necessity covering its present plant and system" and that the commission shall grant "the certificate to the utility" when proof has been presented of "present existence and operation" of the plant and system, it is nevertheless petitioner's position that because of the overlap in the areas where its plant and system were presently operating with areas included in broad general certificates held by New Mexico Electric, it was incumbent on the Commission to specify what rights the petitioner had in any area of overlap with the intervenor's certificate.

Petitioner bases its argument on recognized rules of statutory construction, the history of utility regulations in New Mexico, and the benefits sought to be accomplished by the legislature. It is the position of petitioner that when § 68–7–1.1(B), supra, speaks of "overlap or conflicts" between a certificate held by a utility and a certificate for "present plant, lines and system" of a cooperative, necessarily it must have been the legislative intent expressed in § 1, Chap. 89, N.M.S.L.1961 (§ 68–3–1, N. M.S.A.1953) to thereby "provide for the construction, development and extension, *without unnecessary amplification and economic waste*, of proper plants and facilities for the rendition of service to the general public and to industry." The argument proceeds a step further to the contention that to accomplish this end areas to be served must necessarily be outlined and delineated.

The Commission responds generally agreeing to the rules of statutory construction advanced by petitioner, but also calls attention to the rule stated in De Graftenreid v. Strong, 28 N.M. 91, 94, 206 P. 694, as follows:

"* * * What the Legislature intends is to be determined, primarily, by what it says in the act. It is only in cases of ambiguity that resort may be

had to construction. Courts cannot read into an act something that is not within the manifest intention of the Legislature, as gathered from the statute itself. To do so would be to legislate, and not to interpret. * * *"

To like effect are George v. Miller & Smith, Inc., 54 N.M. 210, 219 P.2d 285; Carper v. Board of County Comm'rs of Eddy County, 57 N.M. 137, 255 P.2d 673; In re Cox's Estate, 57 N.M. 543, 260 P.2d 909. The clearest and best statement of the rule by this court is found in the early case of the Regents of the Agricultural College of New Mexico v. Vaughn, 12 N.M. 333, 78 P. 51. In that case mandamus was sought by the Regents against Vaughn, the state treasurer, to force him to pay to them a $25,000 appropriation made by the legislature out of a certain fund created by the legislature by ordering transfer of amounts in other existing funds thereto. The auditor had refused to issue a warrant on the treasurer because advised there was no money in the fund out of which the appropriation had been made. We quote the following:

" * * * The contention of the appellants is that it was the intention of the Legislature to have transferred to the temporary provisional fund the money standing on the books of the treasurer of the Territory to the credit of the capitol building bond sinking fund, and the provisional indebtedness bond sinking fund, and that the treasurer should have construed the law so as to transfer the balances standing to the credit of these accounts to the temporary provisional indebtedness fund.

"We do not so construe the duty of the treasurer. The laws of this Territory designate names under which certain funds shall be carried on the books of the treasurer, and provide that payments of warrants shall only be made out of funds to the credit of the accounts on which they are drawn, and that if there is no money in the treasury to the credit of the particular fund on which the warrant is drawn, that such warrant shall not be paid, and that if it is paid the treasurer shall be liable to a heavy fine and imprisonment and removal from office. Under these circumstances we do not think that the treasurer would have been justified in assuming that it was the intent of the Legislature to have him transfer to the temporary provisional indebtedness fund, moneys carried on his books in other names than those designated in the act. The treasurer showed proper caution and prudence in not making the transfer, without being compelled by an order of the court to do so.

"Sec. 13, of chap. 108, Laws of 1903, is not at all ambiguous. Its wording is clear and resort need not be had to any other law or to any of the rules of statutory construction to explain its

meaning. The presumption is that the legislative body knew just what it was doing when it passed it. It would be a violent stretch of the imagination to hold that the Legislature intended to order funds other than those mentioned in the law to be turned over to the temporary provisional indebtedness fund, created by it. As far back as 1884, the Legislature enacted that funds to pay the interest on and to redeem the capitol building bonds, should be carried on the books of the Territorial treasurer in a fund to be called the capitol building bond sinking fund; and in 1889, it provided that funds to pay the provisional indebtedness bonds when due should be carried in a fund to be called the provisional indebtedness sinking fund. Surely if the legislature had intended to transfer these funds to the temporary provisional indebtedness fund, it would have said so. * '* *"

We could paraphrase that it would be a violent stretch of the imagination to hold that the legislature intended the Commission to delineate areas of overlap or conflict where the certificate of petitioner would be applicable when it provided only for a certificate covering its present plant, lines and systems, and again, surely if the legislature had intended that the certificate should delineate the area which it covered, it would have said so.

As we read the plain language of § 68–7–1.1, supra, that upon timely filing (ten days after effective date of 1961 act) of an application for a certificate of public convenience and necessity to cover a cooperative's "present plant, lines and system" and upon proof that the same are in existence and operating, the certificate so applied for shall be granted. Subsection B merely provides that both the certificate so granted as well as any pre-existing certificate overlapping or conflicting with that granted to the cooperative shall be valid and the service under both shall continue. No suggestion of delineation of areas or territory served or to be served is contained in the plain language used by the legislature. Language to accomplish an outlining or limiting of areas would not have been difficult to devise. As a matter of fact, references to "territory" are contained in § 68–7–1, N.M.S.A.1953, which has been part of our law since 1941.

We conclude that the commission ruled correctly, and that the district court did not err in dismissing the petition for review. The judgment of the district court is affirmed.

It is so ordered.

CHAVEZ and COMPTON, JJ., concur.