661 P.2d 1324

**SPRINGER ELECTRIC COOPERATIVE, INC., a New Mexico corporation, Plaintiff-Appellant,**

v.

**CITY OF RATON, a municipal corporation, and the Raton Public Service Company, a New Mexico corporation, Defendants-Appellees.**

No. 13892.

Supreme Court of New Mexico.

April 5, 1983.

Rehearing Denied April 27, 1983.

Milton S. Seligman, Albuquerque, Erwin & Davidson, William C. Erwin, Raton, for plaintiff-appellant.

Robertson & Blair, G. Gordon Robertson, Raton, for defendants-appellees.

## OPINION

RIORDAN, Justice.

Springer Electric Cooperative, Inc. (Cooperative) brought suit to enjoin the City of Raton (Raton) and the Raton Public Service Company (RPSC) from constructing certain electric service lines within five miles from Raton's municipal boundary and for a declaratory judgment as to the service rights of the two utility systems in the territory within five miles of Raton's municipal boundaries. The district court denied Cooperative relief and declared that unrestricted competition between the two utility systems was permitted. Cooperative appeals. We reverse in part and affirm in part.

The issues on appeal are:

I. Whether the district court erred in finding that Raton has not exercised or attempted to exercise any dominion over Cooperative's franchise rights in violation of Section 3–24–7, N.M.S.A.1978.

II. Whether the district court erred in finding that certain Customers of RPSC who live within the disputed area are indispensable parties pursuant to N.M.R.Civ.P. 19, N.M.S.A.1978 (Repl.Pamp.1980).

Cooperative is a rural electric cooperative corporation, incorporated on October 30, 1944, pursuant to the Rural Electric Cooperative Act, presently compiled as Sections 62–15–1 through 62–15–32, N.M.S.A.1978 (Orig.Pamp. and Cum.Supp.1982). Cooperative renders electric utility service in five northeastern New Mexico counties, one of which is Colfax County which includes Raton and the area outside its municipal boundaries. On March 15, 1967, Cooperative became a public utility and on June 20, 1967, was granted a Certificate of Public Convenience and Necessity by the New Mexico Public Service Commission to serve the area outside Raton's municipal boundaries.

Prior to 1945, Raton acquired a municipal electric system by creating and incorporating RPSC as a municipally owned corporation with a twenty-five year franchise to operate Raton's municipal electric facilities. All of RPSC stock is held by trustees for the sole benefit of Raton. All net utility revenues of RPSC go to Raton and are pledged to support revenue bonds to finance utility capital improvements.

On January 25, 1979, Cooperative received information that RPSC proposed to furnish electric service to three separate residential lots about 2.1 miles east of Raton's municipal boundaries. On January 26, 1979, the manager of Cooperative verbally informed the president of RPSC that Cooperative had adequate facilities and active service in the proposed residential area and that only Cooperative was the proper utility to furnish electric service to the consumers in the three individual residential lots. On February 16, 1979, Cooperative notified RPSC by letter of its facilities in the proposed residential area, of its ability, willingness, and intention to render any electrical service needed, and of its objection to any RPSC attempt to serve the three proposed residential lots. On February 23, 1979, RPSC notified Cooperative that it had begun construction of a service lines to serve the three proposed residential lots and that it was not only entitled but intended to do so under the claim that it was part of the statutory service area of the municipality.

Thereafter, RPSC completed construction of the service lines.

Cooperative then brought suit against Raton and RPSC to enjoin both from furnishing electric utility service to the three residential lots and to obtain a declaration of respective rights in the five mile area. Cooperative claimed that the operation of the municipal electric utility through RPSC is ultra vires and illegal.

After a hearing, the district court found that the Rural Electric Cooperative Act was to be construed in light of Article IV, Section 26 of the New Mexico Constitution, which forbids the granting of any "exclusive right, franchise, privilege or immunity", and that the Rural Electric Cooperative Act does not confer upon Cooperative an exclusive service territory in rural areas lying within five miles of Raton's municipal boundaries. The district court further found that it had no statutory authority or common law jurisdiction to apportion specific territories to the parties as their *exclusive* service areas. Also, the district court found that Cooperative was entitled to continue the use of its rights, privileges and franchises and its transmission and distribution lines without being subject to the dominion or any interference by Raton, RPSC, or both.

On appeal, Cooperative does not contend that it has been granted or that it possesses an *exclusive* franchise to sell electricity in the five mile area outside Raton. Rather, Cooperative argues that the legislature *limited* Raton's right to serve in that area, and that this legislative limitation does not constitute an unconstitutional *exclusive* franchise in violation of Article IV, Section 26.

Raton, however, claims that there is no evidence of any interference by Raton with its lines nor evidence of an attempt by Raton to regulate or exercise dominion over Cooperative's transmission and distribution system or activities because Raton has at all time acknowledged Cooperative's right to serve customers and to compete within the five mile zone specified in Section 3–24–7.

Therefore, Raton argues that the district court correctly declared the rights of the parties. We disagree.

## I  Section 3–24–7

In order to determine the rights and any limitations of electrical utility competition between a rural electric cooperative and a municipality, we must begin by construing Section 3–24–1, N.M.S.A.1978 (Cum.Supp. 1982), which provides in pertinent part:

A. Any municipality may, by ordinance, acquire, operate and maintain an electric utility for the generation and distribution of electricity to persons residing within its service area. The service area of a municipality includes:

(1) territory within the municipality;

(2) territory within five miles of the boundary of the municipality in the case of any municipality heretofore acquiring or operating any municipal electric utility or part thereof *in the territory within five miles of the boundary of the municipality in conformity with the provisions of Chapter 132, New Mexico Laws, 1945, or as subsequently amended....* [Emphasis added.]

Chapter 132 of the 1945 N.M. Laws (Chapter 132) provides in pertinent part:

Section 11. The provisions of this Act shall be applicable to any and all incorporated towns or villages which have contracted to purchase or construct any such public utility by written contract duly and legally entered into within one year prior to the passage of this Act, except where pledges have been made to any contemplated R.E.A. project, *any such municipal corporation shall yield to any R.E.A. project* where such lines or service will be extended to others in the rural area adjacent to any municipal limits and including any extensions as granted by this Act.

Section 12. *Provided, however, that nothing herein shall be so construed that it will allow any such municipal corporation, as hereinabove enumerated, to exercise dominion in or over territory outside its corporate limits and in which rights have been granted to an electric cooperative* under and by the provisions of Sub-section (k), Section 3 of Chapter 47, of the Sessions Laws of 1939, Laws of New Mexico, or acts amendatory thereof. [Emphasis added.]

A history of Chapter 132 reveals that it was codified as Sections 14–39–32 through 14–39–43, N.M.S.A.1953 and remained in effect until 1965 when, as a part of the old Municipal Code, it was repealed by 1965 N.M. Laws, ch. 300; § 595, which enacted the current Municipal Code. Nevertheless, a review of the current Municipal Code demonstrates that the Legislature must have intended that the limitations imposed by Chapter 132 remain in effect because Chapter 132 is specifically referred to in Section 3–24–1. Furthermore, the Legislature clearly intended a municipal electrical utility limitation by enacting Section 3–24–7 which mirrors Section 12 of Chapter 132. Section 3–24–7 is entitled and provides:

### Limitations on electric utility of municipality.

A. No municipality in the operation of its electric utility may exercise dominion over territory outside its boundary in which rights have been granted to an electric cooperative under the provisions of Section 62–15–3 NMSA 1978.

B. All acts and parts of acts in conflict with Section 3–24–1 through 3–24–10 NMSA 1978, are repealed, except that these sections shall not be construed as amending or repealing Section 62–9–1 NMSA 1978.

Section 3–24–7(A) expressly prohibits a municipality from *exercising dominion in territory* in which rights have been granted to an electric cooperative. Exercising dominion over territory is defined as exerting a right to the property. *See Knotts v. Safeco Insurance Company of America,* 78 N.M. 395, 432 P.2d 106 (1967). In the present case, the district court found that Raton had neither exercised nor attempted to exercise any dominion over Cooperative's lines or franchise rights, and that Raton and RPSC have consistently asserted their right to take on new customers who might alternatively be served by Cooperative. A

review of the record, however, indicates otherwise. For example, the mere construction of facilities by Raton beyond its boundary under a claim of right demonstrates an attempt to exercise some form of dominion.

In construing Sections 3–24–1 and 3–24–7 as applicable to Cooperative, Raton and RPSC, we must ascertain and effectuate the intention of the Legislature which is primarily to be determined from the language used in the statutes as a whole. *See T.W.I.W., Inc. v. Rhudy,* 96 N.M. 354, 630 P.2d 753 (1981); *Arnold v. State,* 94 N.M. 381, 610 P.2d 1210 (1980). After reading Sections 3–24–1 and 3–24–7, we determine that the Legislature specifically limited the service area and right of a municipality to operate an electric utility if there is a rural electric cooperative rightfully operating within five miles of the municipality's boundaries pursuant to the Rural Electric Cooperative Act and in conformity with Chapter 132 *or* as subsequently amended. Had the Legislature intended unrestricted competition between a municipal electric utility and a rural electric cooperative rightfully operating within five miles of the municipality's boundaries, then it could easily have either used language to that effect or it could have deleted all references to Chapter 132 in Section 3–24–1 and repealed Section 3–24–7. *Compare* § 62–9–2(B), N.M.S.A.1978 *with* § 3–24–7 (if certificates for regulated utilities overlap as to certain areas needing service, then both certificates are permitted to continue and compete, as opposed to electric cooperatives and municipalities both of which may be restricted). Sections 3–24–1 and 3–24–7 require that a municipality shall yield to a rural cooperative's project which rightfully extends lines or service to such an area. *See Lea County Elec. Coop. v. New Mexico Pub. Serv. Com'n,* 75 N.M. 191, 402 P.2d 377 (1965), *cert. denied,* 385 U.S. 969, 87 S.Ct. 503, 17 L.Ed.2d 433 (1966). Furthermore, inasmuch as rural electric cooperatives are subject to

Article IV, Section 26, we nevertheless determine that this restriction of Raton's exercise of dominion does not violate Article IV, Section 26 because an *exclusive* right or franchise is not granted to Cooperative.[1]

Therefore, after reviewing the record, we hold that the district court erred in finding that Raton and RPSC did not exercise dominion over territory within five miles of Raton's municipal boundaries, in which rights had been granted to Cooperative as an electric cooperative.

## II. *Indispensible parties*

The district court found that "Paul Frey, Jim Davis, Wayne Hogg, Harry LaTier and Elton Rikel [Customers] are all presently customers of [RPSC]." Customers are all residents of Colfax County, New Mexico, readily subject to the service of process, interested in the subject of this action, and "are so situated that the granting of an injunction in their absence might as a practical matter impair or impede their ability to protect that interest." The district court, therefore, concluded that Customers are indispensable parties, within the meaning of Rule 19 of New Mexico Civil Procedure, "in respect of an action to enjoin RPSC from serving them electric utility service." Springer claims that the district court erred in so finding. We disagree.

In addition to a declaratory judgment as to the service rights of the two electric utility systems, Cooperative's complaint requested that Raton be permanently enjoined from serving Customers. The record indicates that at the time Cooperative brought suit, Customers had already contracted with Raton to provide electric service. Rule 19 provides in pertinent part:

(a) A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action

1. This concept was discussed in 1951–52 Op. Att'y Gen. No. 5624, dated December 31, 1952. For some reason, it does not appear in the compiled volume of 1951–52 Attorney General Opinions, however, the New Mexico Supreme Court Law Library has No. 5624 on file.

in his absence may (A) as a practical matter impair or impede his ability to protect that interest, or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

We have repeatedly held that an indispensable party is one whose interests will be necessarily affected by judgment in a particular case. *Home Fire & Marine Insurance Company v. Schultz,* 80 N.M. 517, 458 P.2d 592 (1969); *Meeker v. Walker,* 80 N.M. 280, 454 P.2d 762 (1969). Furthermore, we have long held that all parties to a contract are necessary and indispensable without which the district court is without jurisdiction to enjoin a party from performing it. *Page v. Gallup,* 26 N.M. 239, 191 P. 460 (1920). Because Customers had previously contracted with Raton, we determine that the district court did not err in finding that Customers were indispensable parties in respect of an action to enjoin them from receiving electric utility service.

This matter is remanded to the district court for further proceedings not inconsistent with this opinion.

IT IS SO ORDERED.

PAYNE, C.J., and THOMAS A. DONNELLY, Court of Appeals Judge (sitting by designation), concur.